UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COUNTY OF ERIE, NEW YORK,

          Plaintiff,

   v.

FEDERAL HOUSING FINANCE AGENCY, as
Conservator for Federal National Mortgage Association
and Federal Home Loan Mortgage Association;
FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a/k/a "Fannie Mae", a Federally Chartered Corporation;
FEDERAL HOME LOAN MORTGAGE
ASSOCIATION, a/k/a "Freddie Mac", a Federally
Chartered Corporation,

          Defendants.

**DECISION AND ORDER**
13-CV-284S

## I.  INTRODUCTION

The County of Erie contends that Defendants – the government-sponsored enterprises commonly known as Fannie Mae and Freddie Mac, and their conservator, the Federal Housing Finance Agency ("FHFA") – failed to pay transfer taxes to the County. It also seeks a declaratory judgment, which, if granted, would order Defendants to pay these taxes in the future.

Defendants move to dismiss the complaint, arguing that they are exempt from the tax. For the following reasons, that motion is granted.

## II. BACKGROUND

**A.    Facts**[1]

### 1. The Parties

Erie County is a municipal corporation, organized and existing under the laws of the State of New York.

Fannie Mae is a government-sponsored enterprise chartered by Congress to "establish secondary market facilities for residential mortgages," to "provide stability in the secondary market for residential  mortgages," and to "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Freddie Mac is also a corporation chartered by Congress for substantially the same mission. Id. § 1451. Essentially, Fannie and Freddie buy home loans from approved mortgage sellers, package them into mortgage-backed securities, and sell them in a secondary market. "The aim is to increase the amount of funds available to financial institutions for home loans and, in turn, to increase American home ownership." Montgomery Cnty. Comm'n v. FHFA, No. 2:12CV885-MHT, 2013 WL 1896256, at *1 (M.D. Ala. May 6, 2013).

FHFA is an independent federal agency, created by the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654, codified at 12 U.S.C. § 4617 *et seq.*, with regulatory and oversight authority over Fannie Mae and Freddie Mac.

Having suffered great losses in the wake of the 2008 financial crisis, Frannie and Freddie were placed into FHFA's conservatorship. The Conservator has the statutory power to "operate" the two enterprises and "to conduct all [of their] business," with the

---

[1]Facts alleged in the complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

statutory mission of, among other things, "preserv[ing] and conserv[ing] the[ir] assets and property." Id. § 4617(b)(2)(B).

### 2. The Transfer Tax

The State of New York imposes a tax on the conveyance of real property – a "transfer tax" – at a rate of $2 for each $500. N.Y. Tax Law § 1402(a). New York further authorizes Erie County to collect its own transfer tax at a rate of $2.50 for each $500. N.Y. Tax Law § 1425; Erie Cnty. Local Law 4-1990 § 3 (instituting such a tax). Accordingly, the tax on the conveyance of real property in Erie County is $4 per $1,000 for New York State and $5 per $1,000 for the County of Erie, for a total of $9 per $1,000 of value. The County of Erie alleges that Defendants have "wrongfully not paid the above stated taxes on the transfer of real property as is required by New York State and Erie County Law." (Pl.'s Br. at 1.) Although it is not specifically spelled out in the complaint, presumably Fannie Mae and Freddie Mac acquired real property in Erie County through foreclosures on mortgages that they owned or guaranteed. Then, when selling these properties to third parties, they did not pay the transfer taxes.

## B. Procedural History

Plaintiffs commenced this action by filing a complaint in this Court on March 20, 2013. Defendants filed the motion to dismiss on June 26, 2013. Briefing on that motion concluded on January 31, 2014, when Defendants filed, with this Court's permission, a second notice of supplemental authority.

### III.  DISCUSSION

**A.    Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is

entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge

the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**B.      Defendants' Motion**

There is no dispute that Defendants did not pay the tax that Erie County seeks to

collect. Rather, Defendants argue that they are not obligated to pay it. Indeed, Sections

1452(e), 1723a(c)(2) and 4617(j)(2) of Title 12 of the United States Code, which apply

respectively to each of the defendants, contain nearly identical language; those sections

provide that Defendants:

> **shall be exempt from all taxation** now or hereafter imposed
> by . . . any State, county, municipality, or local taxing authority,
> **except that any real property of the Corporation [or Agency]**
> **shall be subject to State, territorial, county, municipal, or**
> **local taxation** to the same extent according to its value as
> other real property is taxed.

12 U.S.C. §§ 1452(e) (Freddie Mac), 1723a(c)(2), (Fannie Mae) 4617(j)(2) (FHFA)

(emphasis added).

There is no dispute that these Sections are applicable. Accordingly, Defendants are

exempt from "all taxation" save property taxes. Because the tax at issue here is a tax on

the transfer of property, and not on the property itself, Defendants maintain that the

property-tax exception does not apply. They rely principally on Bismarck Lumber, a 1941

Supreme Court case where the Court held that a statute – providing that "every Federal

land bank . . . shall be exempt from Federal, State, municipal, and local taxation, except

taxes upon real estate held, purchased, or taken" – exempted land banks from sales taxes

on property that they bought.  314 U.S. 95, 96 n.1, 99-100, 62 S. Ct. 1, 86 L. Ed. 65 (1941).

In response, Erie County first claims that the tax falls within the property-tax

exception. It next argues, relying on United States v. Wells Fargo Bank, 485 U.S. 351, 355, 108 S. Ct. 1179, 99 L. Ed. 2d 368 (1988), that "all taxation," does not truly mean all taxes, but only direct taxes (and thus, not transfer taxes). And last, it contends that the Defendants' tax exemption violates the Commerce Clause . To this end,  it concedes that a corporation can be immune from state taxation for two reasons: (1) if Congress, acting within the confines of the Constitution, expressly authorizes it, *or* (2) if a corporation has immunity as a "federal instrumentality." It argues, however, that (1) Congress lacked the power to authorize immunity in this case because "taxation of real estate involves a local activity that does not affect interstate commerce" and (2) Defendants are not "federal instrumentalities." (Pl.'s Br. at 12.)

But, over the course of the last three years,[2] arguments virtually identical to those raised here have been unanimously rejected by dozens of federal courts, including four appellate courts.[3] The weight of authority in Defendants' favor is overwhelming in both its

---

[2]This type of lawsuit is a relatively recent development. As one court explained:

> The hit that Fannie [and Freddie] took beginning in 2008 coincided with the decline in states' fiscal fortunes caused by the effect on their tax base of the financial crisis and ensuing economic depression. So at the same time that Fannie found itself for the first time making frequent sales of property that it had foreclosed on (since the owner of the mortgage usually obtains title to the mortgaged property in the event of a default), the states (including their subdivisions, such as counties) found themselves in dire need of additional tax revenues but reluctant to impose or increase taxes that would drive businesses and people to lower-tax states.

DeKalb Cnty. v. FHFA, --- F.3d ----, No. 13-1558, 2013 WL 7098638, at *2 (7th Cir. Dec. 23, 2013). Thus, because "there was no danger that taxing Fannie would drive people or businesses out of a state, and the number of foreclosures made it possible that the imposition of such a tax on Fannie would produce significant revenue," id., counties and states throughout the country began to attempt to collect taxes on the transfer of Fannie- and Freddie-owned property.

[3]The Eastern District of Michigan appears to be the lone court finding differently. See Oakland Cnty. v. FHFA, 871 F. Supp. 2d 662 (E.D. Mich. 2012). But that decision was subsequently vacated by the Sixth Circuit.

volume and its persuasiveness. See Hennepin Cnty. v. Fed. Nat. Mortgage Ass'n, --- F.3d ----, No. 13-1821, 2014 WL 443983 (8th Cir. Feb. 5, 2014); Montgomery Cnty., Md. v. Fed. Nat. Mortgage Ass'n, 740 F.3d 914, 917 (4th Cir. 2014); Cnty. of Oakland v. FHFA, 716 F.3d 935, 936 (6th Cir.) cert. denied, 134 S. Ct. 253 (2013); Bd. of Comm'rs of Montgomery Cnty., Ohio v. FHFA, 3:12-CV-245, 2013 WL 5755420 (S.D. Ohio Oct. 23, 2013) Hall Cnty., Ga. v. FHFA, 1:12-CV-4402-TWT, 2013 WL 4670612 (N.D. Ga. Aug. 30, 2013); Floyd Cnty., Ga. v. FHFA, 1:13-CV-56-TWT, 2013 WL 4670668 (N.D. Ga. Aug. 30, 2013); DeKalb Cnty., Ga. v. FHFA, No. 1:12-CV-2470-TWT, 2013 WL 4670534 (N.D. Ga. Aug. 30, 2013);  Comm'rs of Bristol Cnty. v. Fed. Nat. Mortgage Ass'n, No. CIV. 12-11525-NMG, 2013 WL 4095021 (D. Mass. Aug. 9, 2013); Randolph Cnty., Ala. v. Fed. Nat. Mortgage Ass'n, 3:12-CV-886-WKW, 2013 WL 3947614 (M.D. Ala. July 31, 2013); Vadnais v. Fed. Nat. Mortgage, No. CIV. 12-1598 DSD/TNL, 2013 WL 3900037 (D. Minn. July 29, 2013); Bd. of Cnty. Comm'rs of Kay Cnty., Okla. v. FHFA, 956 F. Supp. 2d 184 (D.D.C. 2013); City of Providence v. Fannie Mae, 955 F. Supp. 2d 83 (D.R.I. 2013); City of Spokane v. Fannie Mae, No. cv-13-0020, 2013 WL 3288413 (E.D. Wash. June 29, 2013); McNulty v. FHFA, 954 F. Supp. 2d 294 (M.D. Pa. 2013); Doggett v. FHFA, No. 2-12-cv-553, 2013 WL 2920388 (M.D. Fla. June 13, 2013); Butts v. Fannie Mae, No. 9:12-cv- 1912 (D.S.C. May 23, 2013); Athens-Clarke Cnty. Unified Gov't v. FHFA, 945 F. Supp. 2d 1401(M.D. Ga. 2013); Montgomery Cnty. Comm'n v. FHFA, supra, 2013 WL 1896256; Cape May Cnty., N.J. v. Fannie Mae, No. 12-cv-4712 (D.N.J. Apr. 30, 2013); Montgomery County, Maryland v. Fannie Mae, No. 8:13-cv-66, 2013 WL 1832370 (D. Md. Apr. 30, 2013); Vadnais v. Fannie Mae, No. 12-cv-1598, 2013 WL 1249224 (D. Minn. Mar. 27, 2013); Hennepin Cnty. v. Fannie Mae, No. 12-cv-2075, 2013 WL 1235589 (D. Minn. Mar. 27, 2013);  Delaware

Cnty., Pa. v. FHFA, No. 2:12-cv-4554, 2013 WL 1234221 (E.D. Pa. Mar. 26, 2013); Fannie

Mae v. Hamer, No. 3:12-cv-50230, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013); Nicolai v.

FHFA, 928 F. Supp. 2d 1331(M.D. Fla. 2013); Hertel v. Bank of Am., 897 F. Supp. 2d 579,

(W.D. Mich. 2012); Dist. of Columbia ex rel. Hager v. Fannie Mae, 882  F. Supp. 2d 107

(D.D.C. 2012).

A recent case from the Seventh Circuit is particularly relevant, emblematic of this

line of cases, and persuasive. In DeKalb County, Judge Posner, writing for a unanimous

panel, rejected each of the arguments advanced by Erie County here. DeKalb Cnty. v.

FHFA, --- F.3d ----, No. 13-1558, 2013 WL 7098638 (7th Cir. Dec. 23, 2013).

The court found that "Fannie's exemption is from 'all taxation' except real property

taxation, *and a tax on a real estate sale is a tax not on property but on the transfer of*

*property* – a well-recognized distinction." Id. at *3 (emphasis added); see also Montgomery

Cnty., 740 F.3d at 920 ("[E]very legal and common understanding distinguishes a property

tax from a transfer or sales tax."). The DeKalb court went on to find that because the

statutes "carved an express exception for one type of tax[,] Congress could be expected

to make an express exception for any other type of tax that it wanted state and local

governments to be permitted to levy on Fannie." 2013 WL 7098638 at *3. The court further

rejected the argument that Wells Fargo compels a finding that "all taxation" means only

"direct taxes," and not transfer taxes.[4] Id. at *4. It called this interpretation of the term "all

taxation" "very strange [], equivalent to interpreting 'all soup' to mean 'all lobster bisque.'"

---

[4]The DeKalb court explained the distinction between "direct" and "indirect" taxes. "The former term," wrote the court, "now embraces just capitation taxes (taxes per head, such as a poll tax – 'poll' being a Middle English word for 'head') and taxes on real and personal property, and the latter term embraces all other taxes, including therefore real estate transfer taxes." 2013 WL 7098638 at *3 (internal citations omitted). It went on to explain the origin and purpose of this distinction. Id.

Id. It instead found that Bismarck controls, holding, "The important point is that, as is plain from reading Wells Fargo, and plainer still when it is read in conjunction with Bismarck, the Fannie Mae statute exempts Fannie from real estate transfer taxes levied by state or local government." Id. at *5.

Finally, the DeKalb court rejected the argument that the statute granting the Defendants exempt status is unconstitutional. The court found it sufficient that Congress expressly granted them statutory immunity. See First Agricultural Nat'l Bank of Berkshire Cnty. v. State Tax Comm'n, 392 U.S. 339, 341, 88 S. Ct. 2173, 20 L. Ed.2d 1138 (1968) (federal statute was sufficient to exempt a federally-created bank from paying a Massachusetts sales tax – regardless of the bank's instrumentality status). Congress was easily within its authority under the Commerce Clause to exempt these enterprises because it is "obvious that the home mortgage market is nationwide, and indeed worldwide, with home mortgages being traded in vast quantities across state lines." DeKalb, 2013 WL 7098638 at *6; see also Montgomery Cnty., 740 F.3d at 924 ("Congress could rationally have believed that state taxation would substantially interfere with or obstruct the legitimate purposes of Fannie Mae and Freddie Mac of regulating and stabilizing the secondary mortgage market."). And, though this would be enough to render the statute constitutional, the court also went on to note that it "doubted" that the Defendants were not "federal instrumentalities" despite being publicly-traded companies. DeKalb, 2013 WL 7098638 at *6–*7. The Eighth Circuit was more direct: "no question remains that Fannie Mae, Freddie Mac and the FHFA are governmental instrumentalities which Congress has the authority to protect by exempting them from taxation imposed by the states." Hennepin Cnty., 2014 WL 443983 at *3.

Though <u>DeKalb</u> (and the Fourth and Eighth Circuit cases) was decided after Erie County's response was filed in this case, the rationale provided by Judge Posner is substantially similar to the arguments raised by Defendants here; it is also similar to the rationale provided in cases that were decided before briefing was closed. Yet the County has not provided any federal case law or persuasive reasoning that would lead this Court to depart from these well-reasoned decisions. For example, Erie County attempts to distinguish the Sixth Circuit case, <u>Oakland</u>, on the basis that the parties stipulated that the transfer tax does not fit into the real-property exception. But Erie County fails to note – almost disingenuously – that the <u>Oakland</u> court went on to find that "even if [the plaintiffs] had not forfeited the argument, the transfer tax, as a privilege tax, does not fit into the carve out allowing for taxes on real property." 716 F.3d at 939 n. 6. Erie County further fails to distinguish the principal holding in <u>Oakland</u> – that Fannie Mae, Freddie Mac, and the FHFA are exempt from a Michigan transfer tax.  "A straightforward reading of the statute," the court held, "leads to the unremarkable conclusion that when Congress said 'all taxation,' it meant all taxation." <u>Oakland</u>, 716 F.3d at 940.

Nor can New York law save Erie County's claim that the transfer tax is synonymous with a property tax. To the contrary, it reaffirms the "well-recognized distinction." <u>See</u> <u>DeKalb</u>, 2013 WL 7098638 at *3. Under New York law, a "tax is a property tax when imposed by reason of the ownership of property." <u>In re Vanderbilt's Estate</u>, 64 N.E. 782, 784 (1902). But New York's "real estate transfer taxes are incurred as a consequence of [a] sale" of  property – not, as Defendants correctly note,  by reason of mere ownership or existence – "and do not result in a lien against the property." <u>U.S. Bank, N.A. v. Persaud</u>, 906 N.Y.S.2d 726, 730 (N.Y. Sup. Ct. 2010) (citing N.Y. Tax Law § 1410). New York, in

fact, maintains a separate statutory scheme for taxes on real property, codified as the "Real Property Tax"; the transfer tax falls within a separate title.

Forced to look elsewhere, Erie County suggests that Hudson Valley, where the New York Court of Appeals found that a statutory exemption for federal credit unions did not exempt their mortgages from New York's mortgage-recording tax, should inform this Court. See Hudson Valley Fed. Credit Union v. N.Y. State Dep't of Taxation & Fin., 20 N.Y.3d 1, 9, 980 N.E.2d 473 (2012). But, while the exemption at issue there is similar, it is not identical.[5] And in fact, in distinguishing Bismark, the Hudson Valley court relied on one of these differences, noting that "the structure of the [credit-union statute] differs" in that it lacks an "including clause." Id. at 3 n. 2. Instead, the credit-union statute simply spells out the various aspects of a credit union's business – "their property, their franchises, capital, reserves, surpluses, and other funds, and their income" – that "shall be exempt." The statutes at issue here are structured differently. Like the statute in Bismark, Congress first excluded "all taxation," then, following that clear exclusion, Congress inserted a "including clause," which, as the Bismark court itself found, is not an "all-embracing definition," but simply an "illustrative principle." See Bismark, 314 U.S. at 100-01.

Whether the New York Court of Appeals decided this correctly – that is, whether the difference in structure is one that should make a difference in outcome – is not relevant

------

[5]In relevant part, that statute provides:

> The Federal credit unions organized hereunder, their property, their franchises, capital, reserves, surpluses, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed.

12 U.S.C. § 1768.

here. It is sufficient to note that, because it relied on an aspect of a different statute that is not present in the Fannie Mae, Freddie Mac, or FHFA statutes, the New York court's holding, which is not controlling in any event, will not guide this Court. Rather, this Court agrees with the legion of courts addressing the very statutes at issue here.

## IV. CONCLUSION

In accordance with the overwhelming weight of authority, this Court finds that Defendants are statutorily exempt from the transfer tax. Further, the exemption is not unconstitutional. Accordingly, Defendants' motion to dismiss is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:        February 27, 2014
              Buffalo, New York


                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court